**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LONETTE PINCKNEY,

                                Plaintiff,

        -against-                                    **1:17-cv-8184 (ALC)**

NANCY A. BERRYHILL, Acting                  **OPINION AND ORDER**
Commissioner of Social Security,

                                Defendant.


**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Lonette Pinckney brings this action challenging the Commissioner of

Social Security's ("Commissioner" or "Defendant") final decision that Plaintiff was not

entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act.

42 U.S.C. §§ 401-433. Each party has moved for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c). ECF Nos. 12; 16-17. The Court has considered parties' submissions

and for the reasons set forth below, Plaintiff's motion is DENIED and Defendant's

motion is GRANTED.

## BACKGROUND

### I.        Procedural Background

On July 21, 2007, Plaintiff applied for Social Security Disability benefits ("SSD")

and for Supplemental Security Income ("SSI"), based on a disability allegedly

commencing on January 1, 2007. Tr. 208-213. The Social Security Administration

initially denied her application on September 14, 2007. *Id.* 110-121. Plaintiff appealed the

denial and requested a social security hearing on February 12, 2008 *Id.* 122-123. On

September 11, 2009, Administrative Law Judge ("ALJ") David Ettinger heard the appeal.

*Id.* 68- 84. Plaintiff appeared pro se and testified at the hearing. On November 6, 2009, ALJ rendered his decision and found that Plaintiff could perform her past duties as a fast food worker and was not disabled under the Social Security Act *Id.* 87-96.

Plaintiff timely requested a review of the hearing decision. Initially, the Appeals Council denied Plaintiff's Request for Review by Notice dated April 22, 2011, then subsequently, on August 26, 2011, the Appeals Council vacated both the denial and the ALJ's decision and remanded the claim under the substantial evidence, error of law and new material provisions of the Social Security Administration Regulations *Id.* 97-103, 104-109; *see also* 20 C.F.R.; C.F.R 404.970; C.F.R and 416.1470.

On January 19, 2012, ALJ Kenneth Scheer presided over a subsequent Administrative Hearing. Here, Plaintiff retained counsel and amended her onset date to May 1, 2008 Tr. 36-66. On January 23, 2012, ALJ Scheer also decided that Plaintiff could perform her past relevant work and was not disabled under the Social Security Act *Id.* 15-30. Plaintiff requested a review of the hearing decision, but the Appeals Council denied the claim on July 9, 2013. *Id.* 1-7.

Plaintiff initially filed this claim before the United Stated District Court for the Southern District of New York. In a Stipulation and Order of Remand dated December 20, 2013, the Court vacated the unfavorable decisions and remanded the case for further administrative proceedings *Id.* 1011-1013.

The third and fourth administrative hearings were held on August 22, 2014 and March 11, 2015 before ALJ Seth Grossman. Plaintiff appeared pro se and testified at both hearings. *Id.* 865-892, 960-985. In these hearings, Plaintiff amended her onset date to January 1, 2013. On May 1, 2015, ALJ Grossman also found Plaintiff could perform her

previous occupation and was not disabled under the Social Security Act. *Id*. 1034- 1038.

Plaintiff requested that the Appeals Council review this decision as well. On August 19,

2015, the Appeals Council vacated the ALJ's decision and remanded the claim.

Specifically, the Appeals Council directed the ALJ to consider and reevaluate all the

treating and examining medical source opinions he did not address in his decision. The

Appeals Council also directed ALJ to consider the claimant's maximum residual

functional capacity and provide appropriate rationale with specific references to the

record *Id*. 1034-1038.

The fifth and six administrative hearings were held on January 28 and June 16, 2016

before ALJ Seth Grossman *Id*. 893-919 and 920-959. On November 28, 2016, ALJ

Grossman found Plaintiff could perform "light work," including her previous occupation.

Therefore, the ALJ decided, she and was not disabled under the Social Security Act *Id*.

842-864. On August 22, 2017, the Appeals Council denied Plaintiff's request for review.

*Id*. 834-841. This was the Commissioner's final act.

## II.    Factual Background

### A. Plaintiff's Background

Plaintiff, born in 1963, was forty-three years old when she allegedly became disabled

and forty-nine when she was last insured.[1] Plaintiff holds a High School diploma and last

worked as a cashier at a fast-food restaurant in 2006. Plaintiff also testified that she did

gardening for about six months, mainly sweeping up grass off-the-books in 2011 and

again in 2012 Tr. 903. She lived with her fiancé and daughter *Id*. 1320.

---

[1] Plaintiff's date last insured was December 31, 2011. *Id*. 847

Plaintiff testified that she has to walk up a flight of stairs to enter her house but is out of breath after the fourth step. *Id*. 927. While at home, Plaintiff testified that she cooked, performed selfcare, watched television and read. Plaintiff also stated that she mopped and swept but was unable to clean heavy furniture or do laundry. *Id*. 1320

Plaintiff generally reserves going out for doctor's appointments. *Id*. 928-930. She occasionally walks to the store across the street from her home but takes her son with her to carry the groceries since she is unable to lift more than five pounds. *Id*. 935-936.

### B. Plaintiff's Alleged Disability

Plaintiff reported having a heart murmur since birth and palpitation episodes since 2000. *Id*. 386. In March 2006, an echocardiogram showed a normal left atrium and aortic valve. *Id*. 460. She had mild tricuspid regurgitation, and mild mitral valve prolapse. *Id*. 460. Plaintiff alleged to experience shortness of breath, palpitations and fatigue as a result of her cardiac impairment. *Id*. 926.

Plaintiff also stated she could not walk less than a block before having to take a short break to catch her breath and alleged to have trouble falling asleep due to her restless legs. *Id*. 938-939. Finally, Plaintiff testified she could not perform her past work or a "sit-down" job due to her shortness of breath, palpitations, fatigue and restless legs. *Id*. 936.

### C. Treating Source Medical Evidence in the Record

### i. <u>Dr. William Lathan</u>

Dr. William Lathan performed a consultative examination of Plaintiff in September 2005, in connection with her claims for DIB and SSI. *Id*. 386-388. She could perform all activities of personal care and daily living *Id*. 386. Plaintiff took the medicine Coreg daily

*Id.* 386. On examination, Plaintiff walked with a normal gait, walked on her heels and toes without difficulty, had a full squat, and presented with a normal stance. *Id.* 387. She used no assistive device; did not need help to change for the examination or getting on or off the table; and rose from the chair without difficulty. *Id.* Furthermore, Plaintiff's chest and lung examinations were normal, she had a rough systolic murmur, and her heart had regular rhythm. *Id.* Her Musculoskeletal and neurological examinations were also normal *Id.* 388. Dr. Lathan diagnosed history of murmur and history of hypertension, and believed Plaintiff had a moderate restriction for strenuous exertion. *Id.* 388.

### ii.   **Dr. Joseph DeRose**

During the relevant period, Plaintiff was treated for mitral valve regurgitation. *See* Tr. 363. In February 2007, Plaintiff complained her condition did not improve for the past two years and that she now had shortness of breath and dyspnea on exertion *Id.* 369. A doctor indicated that she may be a candidate for a minimally invasive valve repair, but Plaintiff reported that she was busy through March. *Id.* 369. A cardiac catheterization report from March 2007 showed reduced left ventricular systolic function with moderate mitral regurgitation, and a chest x-ray showed no active pulmonary disease. *Id.* 370, 379.

On an April 2007 examination with Dr. Joseph DeRose at Montefiore Medical Center ("Montefiore"), Plaintiff's testing showed mitral valve regurgitation and normal coronary arteries. *Id.* 363. These findings made the doctors decide to treat her medically rather than surgically, and Dr. DeRose recommended repeat trans-esophageal echocardiograms. *Id.* 363. He also thought she would be able to receive minimally invasive surgery if necessary. *Id.*

### iii. **St. Barnabas Hospital**

Plaintiff visited a cardiology clinic at St. Barnabas Hospital ("St. Barnabas") in October 2009, complaining of palpitation, shortness of breath, and generalized fatigue. *Id*. 810-812. Plaintiff had an echocardiogram in October 2009, which showed normal left atrium, mild left ventricular hypertrophy with borderline systolic function, thickened mitral valve leaflet with mild systolic prolapse of the anterior leaflet, and normal aortic valve. *Id*. 525.

Plaintiff returned to St. Barnabas in April 2010, and examination was normal other than a systolic murmur Id. 824. Dr. Bello indicated that Plaintiff appeared to be doing well on her current medication. *Id*.

In January 2011, Plaintiff returned to St. Barnabas, where she noted getting more than usual palpitations. *Id*. 827. Medical examiners then administered a Holter monitor test, indicating Plaintiff's heart beat remained in sinus rhythm with a normal heart rate range. *Id*. 774. An echocardiogram from the same month revealed normal left atrium and normal aortic and mitral valves. *Id*. 804. There was a velocity jet and moderate mitral and tricuspid regurgitation. *Id*.

Plaintiff followed up with St. Barnabas cardiology in February 2011, where she noted shortness of breath when carrying heavy objects. *Id*. 830. The doctor advised adhering to her current treatment of Lisinopril. *Id*. 832. A March 2012 examination at St. Barnabas found that Plaintiff had a systolic murmur and normal lung examination. *Id*. 1309.

Plaintiff returned to St. Barnabas in June 2012, noting continued palpitation on-and-off but without any chest pain or shortness of breath. *Id*. 1312. Examination was normal except for systolic murmur and examiners advised Plaintiff to continue with medical

therapy. *Id.* 1313-1314. The next month, Plaintiff indicated that she had pain in her left leg and hand. *Id.* 1316. Examination continued to show heart murmur and her left leg and hand showed no signs of inflammation, tenderness, swelling, or effusion. *Id.* 1317.

### iv.     Dr. Richard Bello

Cardiothoracic surgeon Dr. Richard Bello examined Plaintiff at Montefiore. *Id.* 532-533. Examination was positive for heart murmur and point of maximum impulse (PMI) was laterally displaced; she presented as otherwise normal from a cardiovascular perspective. *Id.* 533, 629. He advised a trans-esophageal echocardiogram before determining whether surgery was appropriate. *Id.* 629. A November 2009 trans-esophageal echocardiogram report showed normal right ventricular function and low-normal left ventricular ejection fraction. A diagnostic catheterization report from December 2009 showed no coronary artery disease, mildly reduced left ventricular function, and mild-to- moderate mitral regurgitation. *Id.* 760. In a follow up appointment with Dr. Bello in January 2010, Plaintiff reported a mild shortness of breath but admitted she could tolerate thirteen blocks of ambulation. *Id.* 821. Plaintiff denied palpitations, dizziness, and fatigue. *Id.* The testing indicated that no surgical intervention was warranted at the time *Id.*

### v.     Dr. George Liu

In March 2012, Plaintiff visited Dr. George Liu at Montefiore, where she complained of episodes of irregular heartbeat that did not "limit her in any way." *Id.* 749. Plaintiff also complained of experiencing fatigue and dyspnea for years after walking up one or two flights of stairs. *Id.* 749. On examination, Plaintiff was in no acute distress. *Id.* 751. Heart examination showed normal PMI with no trills palpable and a regular rhythm. *Id.*

752. Plaintiff had a harsh systolic murmur and Vascular examination was normal. *Id.*

752. EKG showed low-normal left ventricular systolic function, moderate mitral

regurgitation, and mild pulmonary hypertension. *Id.* 753-54. Dr. Liu noted that the septal

defect did not require any intervention at the time and recommended an exercise

tolerance test due to the mitral regurgitation. *Id.*

### vi.    Montefiore Cardiology Department

Plaintiff presented at Montefiore's cardiology department in March 2013, where she

noted palpitations once per week lasting about thirty seconds and complained of dyspnea

*Id.* 1473. She could walk five or six blocks at a slow pace. *Id.* Examination showed

regular heart rate and rhythm with systolic murmur and the electrocardiogram was

normal. *Id.* 1474-1475.

In September 2013, Plaintiff reported she could walk five blocks and had one-

second palpitations twice per week. *Id.* 1462. Her left ventricular ejection fraction was

49%, she had regular heart rate and rhythm and a systolic murmur. *Id.* 1463. Plaintiff was

told to return in four months. *Id.* 1464.

In March 2014, Plaintiff reported having stable symptoms. *Id.* 1456. Plaintiff

reported she was "not trying [to walk] further" than five blocks and had brief palpitations

about twice per week. *Id.* 1456. Plaintiff also reported her primary care physician stopped

her Coreg prescription. *Id.* 1456. Examination revealed regular heart rate and rhythm and

harsh systolic murmur. *Id.* 1457. The cardiologist diagnosed ventricular septal defect and

increased her Coreg prescription. *Id.* 1458.

In April 2014, Plaintiff visited Montefiore and complained of experiencing lower

extremity discomfort and numbness when she laid down. *Id.* 1346. On examination,

Plaintiff's blood pressure was 108/70 and her pulse was seventy-four beats per minute. *Id.* 1348. Plaintiff had a systolic heart murmur and dime-sized PMI. *Id.* 1349. Her straight leg raising test was negative and her neurological examination was intact. *Id.* 1349. Plaintiff walked with a normal gait. *Id.* 1349. The doctor believed the leg pain may be due to restless leg syndrome, given the nighttime occurrence and diabetes. *Id.* 1350.

Plaintiff also visited Montefiore's cardiology department in March 2015, where she reported mild shortness of breath and fatigue, rare palpitations, no syncope, and no chest pain. *Id.* 1583. Her Blood pressure was 114/72. and she had regular heart rate and rhythm along with systolic murmur. *Id.* 1585-1586. The doctor noted that Plaintiff was self-restricted from an exercise standpoint and had no restrictions from a cardiovascular standpoint. *Id.* 1587.

A July 2015 echocardiogram showed no significant changes from the last test, but a September 2015 echocardiogram showed left ventricular enlargement with ejection fraction of 41% *Id.* 1593, 1598.

### vii. **Dr. Marilee Mescon**

In April 2014, Plaintiff attended a consultative examination with Dr. Marilee Mescon in connection with her DIB and SSI claims. *Id.* 1319-1329. Plaintiff reported having high blood pressure since 2010 and diabetes since 2010 but was never hospitalized for either issue. *Id.* 1319. Plaintiff asserted that her heart problems began at birth due to "a leaky cardiac valve." *Id.* 1319. Plaintiff did not complain of chest pain, but she reported occasional palpitations. *Id.* 1319. Plaintiff took Coreg, Glipizide, Lisinopril, Januvia, and Lipitor. *Id.* 1320.

On examination, Plaintiff appeared in no acute distress and walked with a normal

gait. *Id.* 1320. She walked on her heels and toes without difficulty; used no assistive device; and needed no help changing for the examination or getting on or off the examination table. *Id.* 1320. Since her Blood pressure was 150/94, Dr. Mescon advised having her private doctor reassess her blood pressure. *Id.* Plaintiff had a pulse rate of eighty beats per minute. *Id.* Her heart had a regular rhythm and she had a systolic ejection murmur with no gallop or rub audible. *Id.* 1321. Musculoskeletal and neurological examinations were also normal. *Id.*

Dr. Mescon diagnosed high blood pressure, diabetes, and a history of mitral valve prolapse causing a heart murmur. *Id.* 1322. Dr. Mescon opined that based on the examination, Plaintiff had no limitations in sitting, standing, pushing, pulling, or carrying heavy objects. *Id.* 1322. Dr. Mescon also opined that Plaintiff could lift or carry up to twenty pounds continuously; sit for six hours in a workday; stand for six hours in a workday; and walk for six hours in a workday. *Id.* 1324-25. She also believed Plaintiff could continually use her hands and feet. *Id.* 1326. Dr. Mescon indicated that Plaintiff could never balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, or scaffolds. *Id.* 1327.

### viii.  Dr. Daphe Hsu

During an August 2014 cardiology visit to Montefiore with Dr. Daphne Hsu, Plaintiff reported she felt fatigued since her last visit and had about three palpitation episodes per week while at rest. *Id.* 1571. Plaintiff reported tiredness going up one flight of stairs, getting tired after walking one block, and not being able to keep up with her friends. *Id.* Heart rate and rhythm continued to be normal, and she had a harsh systolic murmur. *Id.* 1573. Echocardiogram from that date showed poor echocardiographic

windows. *Id.* 1574. Plaintiff had small restrictive membranous ventricular septal defect and mild-to-moderate mitral regurgitation. And her Ejection fraction was 48.2%. *Id.*

Plaintiff had an exercise stress test in August 2014, and Plaintiff stopped the test at nine minutes and forty-one seconds due to fatigue and dizziness. *Id.* 1542-1543. She had no ischemic changes during exercise or recovery and no arrhythmia. *Id.* 1543.

Dr. Daphne Hsu also completed a cardiac questionnaire in August 2014 and reported that she treated Plaintiff every six months. *Id.* 1537. Dr. Hsu indicated that Plaintiff had fatigue, dizziness, palpitations, and shortness of breath. *Id.* 1537. She believed that Plaintiff could sit up to four hours in a workday; stand/walk one hour in a workday; occasionally lift up to ten pounds; and occasionally carry up to five pounds. *Id.* 1538. Hsu estimated that Plaintiff would be absent more than three times per month. *Id.* 1539.

ix.   **New York Cardiovascular Associates and Dr. Silverman**

Dr. Silverman wrote in a FEGS assessment in November 2009 that Plaintiff was unable to work for at least twelve months. *Id.* 535. Dr. Padmavathi Jagarlamudi, a physician who examined Plaintiff for FEGS in 2009, believed that Plaintiff could do a "sedentary light" job for thirty hours per week, but could not lift heavy weight, climb stairs, or walk long distances. *Id.* 549. He specified limitations of walking and climbing for one-to-three hours and lifting twenty pounds maximum. *Id.* 570.

Plaintiff visited New York Cardiovascular Associates in October 2015. *Id.* 1606. She had unlabored breathing and normal heart rate and rhythm. *Id.* 1608. The doctor assessed systolic congestive heart failure, diabetes mellitus, and idiopathic cardiomyopathy. *Id.*1608.

**x.** **Dr. Ruben Silberman**

Dr. Ruben Silverman completed an undated cardiac disability questionnaire noting Plaintiff's edema, fatigue, palpitations, and shortness of breath. *Id*. 585. Silverman also noted that cold weather, stress, and physical exertion precipitated Plaintiff's symptoms, and these symptoms would increase in a competitive work environment. *Id*. 586. Dr. Silverman also indicated that Plaintiff could sit two hours in a workday and stand or walk less than an hour in a workday. *Id*. 587. He did not believe Plaintiff could lift or carry any weight. *Id*. 587. He expected Plaintiff would be absent from work more than three times per month and that she was incapable of even low stress work. *Id*. 588.

**D. Opinions at the Hearing**

    **i.** **Dr. Dorothy Kundstadt**

At Plaintiff's June 16, 2016 administrative hearing, the Administration called cardiologist and internist, Dr. Dorothy Kundstadt, M.D. to testify based on her review of the records. Dr. Kundstadt assessed a mild to moderate cardiac anomaly that limits Plaintiff from severe exertion. However, she determined Plaintiff could perform light work and could stoop or crouch occasionally. *Id*. 943, 952. The doctor testified that Plaintiff's cardiac condition limited "severe" exertion and she believed Plaintiff was capable of light exertional work. *Id*. 943. Dr. Kundstadt also claimed Dr. Silverman's opinion that Plaintiff could only stand or walk one hour per day and sit for two hours was not supported by the record. Furthermore, Dr. Kundstads stated that Drs Silverman and Hsu's diagnosis of congestive heart failure was incorrect. *Id*. 947.

    **ii.** **Vocational Expert Mary Vasishth**

At Plaintiff's June 2016 hearing, Vocational Expert ("VE") Mary Vasishth

testified to Plaintiff's work and its requirements in the economy. *Id*. 953- 958. Ms. Vasishth testified Plaintiff's past work consisted of "Cashier, Fast Food restaurant", which is classified as unskilled, light work with an SVP of 2 in the Dictionary of Occupational Titles ("DOT") 311.472-010; Tr. 954.

On cross examination, the VE was asked if a hypothetical claimant with the limitations described by Dr. Silverman would be able to perform Plaintiff's past work or any competitive work in the economy. The VE believed the hypothetical claimant could not perform any work due to the exertional limitations described and the excessive absences. *Id*. 957-958.

The ALJ posed another hypothetical question to the VE. He asked if a claimant of the same age, education and past relevant work was limited to light work, could occasionally kneel, crawl, and stoop but could not climb stairs could perform Plaintiff's past work. *Id*. 955. The VE responded that such an individual could perform the job of cashier at a fast-food restaurant. *Id*. 954-955. The ALJ then asked if a person with Plaintiff's background and limitations could perform other jobs in the national economy *Id*. 955-956. The VE testified that such a person could perform work as a sales attendant, retail (DOT 299.677-010, light exertion, unskilled, SVP 2), with approximately 350,000 jobs nationally; cashier II (DOT 211.462-010, light exertion, unskilled, SVP 2), with over a million jobs nationally; and cafeteria attendant (DOT 311.677-010, light exertion, unskilled, SVP 2), with about 146,000 jobs nationally. *Id*. 956.

## LEGAL STANDARD

### I.      Judicial Review of the Commissioner's Determination

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). In other words, this Court must afford the Commissioner's determination considerable deference, and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).

## II.     Commissioners Determination of Disability

### A. Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

## B. The Commissioner's Five-Step Analysis of Disability Claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4). First, the Commissioner determines whether the claimant is employed. *Curry*, 209 F.3d at 122. Second, if the claimant is unemployed, the Commissioner considers whether the claimant has a "severe impairment" that "significantly limits his physical or mental ability to do basic work activities." *Id.* Third, if the claimant suffers from such an impairment, the Commissioner determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations, meaning it conclusively requires a determination of disability. *Id*; *see also* 20 C.F.R., Part 404, Subpart P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ("RFC") to perform her past work. *Curry*, 209 F.3d at 122. Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. *Id.*

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show

that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560).

### III.    The ALJ's Decision

First, ALJ Grossman concluded that Plaintiff had not engaged in substantial gainful activity since her originally alleged onset date of January 1, 2007. *Id.* 847.

Second, the ALJ concluded that Plaintiff has the severe impairment of a "congenital heart condition" *Id.* 847.

Third, the ALJ ruled Plaintiff does not have a severe impairment that meets or medically equates to any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 Id. 848.

Fourth, ALJ Grossman determined that Plaintiff had the residual functional capacity to perform her past work as Fast Food Cashier, including light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, Plaintiff is limited to simple, repetitive work, with only occasional stooping, crawling, kneeling and crouching and no climbing ladders, scaffolds, ramps or stairs. *Id.* 848.

In the alternative, at step five, ALJ Grossman considered Plaintiff's age, education, and job skills, along with the RFC and VE testimony, and concluded that Plaintiff could successfully adjust to work in significant numbers in the national economy, including as a sales attendant, retail, cashier II, or cafeteria attendant, as identified by the VE Id. 855-56).

Based on this assessment, ALJ Grossman determined that Plaintiff is capable of

performing past relevant work as a cashier, fast food DOT 311.471-010, unskilled, light exertional work and was not under a disability, as defined in the Social Security Act, at any time from January 1, 2007, the originally alleged onset date, through the date of the decision *Id.* 855-856.

## DISCUSSION

Plaintiff asserts that ALJ's decision was legally erroneous. Specifically, because the ALJ largely ignored the opinions of Plaintiff's treating professionals. Plaintiff essentially presents three arguments: 1) the ALJ failed to properly develop the record; 2) the ALJ's decision was not supported by substantial evidence; and 3) the ALJ failed to adequately consider the opinions of the treating physicians and examiners to reach his final decision. The Court will address each argument separately.

### I.     The ALJ Properly Developed the Record

Plaintiff asserts that the ALJ failed to properly develop the record because (1) he ignored the opinions of every treating physician and gave partial weight to consultative examiners and (2) he relied exclusively on the conclusion of the non-examining Medical Expert. Plaintiff's Brief ("Pl. Br.") at 18-24.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The record must be "complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." *Roman v. Colvin*, No. 15CIV4800LGSJCF, 2016 WL 4990260, at *7 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, No. 15CIV4800LGSJCF, 2016 WL 4919960 (S.D.N.Y. Sept. 14, 2016) (citing 20 C.F.R. § 416.913(e)) (citing Social Security Ruling

("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).

A claimant's treating physician opinion is generally given more weight than a consultative or non-examining physician's opinion because the treating physician is likely "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is entitled to "controlling weight" only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Despite Plaintiff's assertions, the ALJ appropriately considered and weighed the medical opinion evidence. Furthermore, the opinion evidence supported the RFC. The ALJ is entitled to weigh the medical opinions, and "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barhhart*, 312 F.3d 578, 587-88 (2d Cir. 2002). As noted above, the ALJ is not required to give controlling weight to a treating physician's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence of record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c). If controlling weight is not given to a treating source medical opinion, then the ALJ must weigh the opinion evidence according to the factors in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the ALJ properly considered and weighed the opinion evidence in the record, and the opinions of Drs. Kundstadt and Mescon support the RFC. Tr. 851-854.

Moreover, the ALJ properly considered Medical Examiner and cardiologist Dr. Kundstadt's opinion and accorded it great weight. *Id*. 854. The ALJ considered the ME's

specialty, the consistency of the opinion with the evidence of record, and the doctor's knowledge of the disability program. *Id.* 854. 20 C.F.R. §§ 404.1527(c)(4)-(6), 416.927(c)(4)-(6). These are all appropriate considerations under the regulations. Specifically, the ME testified that she believed Plaintiff could perform light exertional work. Tr. 943. She saw no evidence to support a finding that Plaintiff could not balance, stoop, kneel, crouch, or crawl. *Id.* 943. Dr. Kundstadt testified that the record did not support that Plaintiff had heart failure and did not support the opinion evidence from Plaintiff's treating cardiologists, Drs. Silverman and Hsu. *Id.* 941-949. As the ALJ noted, the ME had the advantage of reviewing the record as a whole. *Id.* 854. Therefore, the Court finds that the ALJ properly considered the opinions of Plaintiff's treating physicians and, thus, properly developed the record.

## II.     The ALJ's Disability Determination Was Supported by Substantial Evidence

Similarly, Plaintiff alleges the ALJ's finding that Plaintiff was able to perform light work with additional limitations was not supported by substantial evidence because it contradicted Dr. Silverman's opinion, the opinions of other examiners in the record, and consultative examination results. Plaintiff also believes the ALJ misapplied the "treating physician rule," and did not properly evaluate Plaintiff's credibility. Pl. Br. 21.

### A. Substantial Evidence Supports the ALJ's Determinations at Step 4

As an initial point, the ALJ's entire opinion is supported by the evidence. *Id.* 854. Though Plaintiff complained about walking issues to Dr. Silverman, Plaintiff also reported she could walk for thirteen blocks. *Id.* 821, 849. Plaintiff also testified that she walked at least two miles to the hearing without a break. *Id.* This evidence is consistent

with the ME's opinion that Plaintiff was able to perform the walking requirements of a light exertional job.

Furthermore, Plaintiff's daily activities support a light RFC finding with additional restrictions. Courts have found activities such as, cooking, showering, shopping, and attending medical appointments support an RFC finding of light work. *See Williams v. Colvin*, No. 15-CV-4173 (ALC), 2016 WL 3034494, at *7 (S.D.N.Y. May 26, 2016); *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015); *Simmons v. Colvin*, No. 13 CIV. 1724 KBF, 2014 WL 104811, at *5 (S.D.N.Y. Jan. 8, 2014). Similarly, though Plaintiff testified that she could not clean heavy furniture or do laundry, Plaintiff engaged in activities such as cooking, showering, shopping and walking to her medical appointments. *Id.* 45-46, 179-81. These daily activities are consistent with an RFC finding of performing light work with additional restrictions.

Moreover, a Montefiore cardiologist in 2015 noted that Plaintiff was "self-restricted from an exercise standpoint" and had no restrictions from a cardiovascular standpoint. *Id.* 851, 1587. Plaintiff's appointment notes also indicate mild symptoms since, generally, Plaintiff indicated having only occasional and short palpitations. Furthermore, though Plaintiff reported occasional fatigue, she generally denied dizziness. *Id.* 751, 821, 1312, 1456, 1462, 1473, 1571, 1583. Plaintiff also stated that in the instances she experienced irregular heartbeats, they did not "limit her in any way." *Id.* 749. As such, the ALJ appropriately concluded that the ME's opinion was entitled to great weight since it was consistent with the evidence of record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (generally, the more consistent a medical opinion is with the record as a whole, the more weight the opinion is assigned). Therefore, the ALJ

appropriately afforded Dr. Kundstadt's opinion great weight. *Id.* 854.

Plaintiff's argument that the ME's testimony is not supported by the record is without merit as well. Pl. Br. at 22-23. While Plaintiff contends that the treating source opinions from Drs. Silverman and Hsu deserved more weight, it is the ALJ's duty to weigh medical opinions. *Veino*, 312 F.3d at 587-88. An impartial medical expert's opinion can be afforded greater weight than a treating source opinion. SSR 96-6p, 1996 WL 374180, at *4; *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (opinions of non-examining sources can be accorded greater weight than those of treating sources); *Garcia v. Colvin*, 14 Civ. 4798 (BMC), 2015 WL 4603422, at *6 (E.D.N.Y. July 30, 2015) ("where the medical adviser who is a specialist in the area gives a medically informed, pointed, and responsive rebuttal to the treating physicians' conclusions, then unless the federal court can find something obviously lacking in that rebuttal, it is hard to disagree with the ALJ's determination to accept it").

Here, the medical expert directly disputed that there was objective medical evidence to support the limitations in the treating physician opinions Tr. 949. Plaintiff argues that cardiac testing is highly technical and cannot be easily interpreted by a layperson. However, this is the reason the ALJ called a ME, specifically a cardiologist, to testify. The ALJ then appropriately weighed the opinions expressed in that testimony *Id.* 854.

As a final point, the ALJ properly found at step four that Plaintiff could perform her past relevant work as a fast food cashier *Id.* 855. An individual will not be found disabled if she can return to her past relevant work as she performed it or as it is typically

performed in the national economy. *Jasinski v. Barnhart*, 341 F.3d 182 (2d Cir. 2003); 20

C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ found that Plaintiff could perform her

past relevant work as a fast food cashier as actually and generally performed, based on

the VE's testimony. Tr. 855, 945-55. The claimant, not the commissioner, has the burden

of proving she could not perform her prior work at step four. 20 C.F.R. §§ 404.1512(a),

416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982); *Dumas v. Schweiker*,

712 F. 2d 1545, 1549 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

Plaintiff failed to meet this burden.

### B. Substantial Evidence Supports the ALJ's Determinations at Step Five

Plaintiff contends that the ALJ's step five findings are legally flawed because the

hypothetical presented to the VE did not consider all of her alleged limitations. Pl. Br. at

24-25.

The ALJ determined at step five that Plaintiff could perform significant numbers of

other work in the national economy. Tr. 855-856. Where the hypothetical posed to the

VE is based on an ALJ's RFC finding, and the RFC finding is supported by substantial

evidence, the hypothetical is proper and the ALJ may rely on the VE's testimony. *See*

*McIntyre v. Colvin*, 158 F.3d 146, 151 (2d Cir. 2014) (ALJ may rely on vocational expert

testimony regarding a hypothetical so long as there is substantial evidence to support the

assumptions therein and they accurately reflect the claimant's limitations and

capabilities) (citing *Dumas*, 712 F.2d at 1553-54, and *Aubeuf v. Schweiker*, 649 F. 2d

107, 114 (2d Cir. 1981)).

Here, the ALJ's hypothetical to the VE properly juxtaposed the ALJ's substantially

supported RFC finding for a range of light work with the ability to occasionally stoop,

crouch, kneel, and crawl; never climbing stairs, ramps, ladders, or scaffolds; and limited to simple, repetitive work. Tr. 848, 954-956. As previously discussed, the RFC finding is supported by substantial evidence. *Id.* 848-854. In response to the ALJ's hypothetical, the VE identified multiple occupations that existed in significant numbers in the national economy that the hypothetical person could perform. *Id.* 855-856, 956. The VE described work such as unskilled and light according to the DOT. *Id.* 956. The ALJ decided Plaintiff could perform such work based on the RFC finding.

Therefore, the ALJ properly relied on the VE's opinion in deciding that Plaintiff could successfully adjust to other work existing in the national economy as an alternative step five finding. *Id.* 855-856. The VE testimony constituted substantial evidence sufficient to meet the Commissioner's burden at the fifth step of the process. *See McIntyre*, 158 F.3d at 151-52; *Dumas*, 712 F. 2d at 1553-54.

### III. The ALJ Properly Considered the Medical Opinions in the Record

Plaintiff argues that the case should be remanded because the ALJ did not follow the "treating physician rule." Pl. Br. at 20-25. However, as discussed above, the ALJ appropriately considered, weighed, and discussed the opinion evidence from Drs. Silverman and Hsu *Id.* 853-854. The ALJ gave Dr. Silverman's opinion little weight because, though pointing out his treating relationship with Plaintiff, Dr. Silverman's opinion was not supported by his own treatment notes or by other evidence of record. *Id.* 853. Dr. Silverman believed that Plaintiff could sit two hours in a workday and stand/walk less than an hour in a workday. *Id.* 587. He did not believe Plaintiff could lift or carry any weight *Id.* This is inconsistent with Dr. Silverman's own treatment notes, which indicated that Plaintiff only admitted to mild shortness of breath but tolerated

thirteen blocks of ambulation. *Id.* 821, 853. The Second Circuit has recognized that an ALJ may afford substantially less weight to a treating source's opinion that is inconsistent with his examination findings. *See Woodmancy v. Colvin*, 577 F. App'x. 72, 75 (2d Cir. 2014) (summary order); *Legg v. Colvin*, 574 F. App'x. 48, 49 (2d Cir. 2014) (summary order); *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (summary order)

In conclusion, the ALJ may weigh the evidence available and make an RFC determination consistent with the record as a whole, and in this instance, the record as a whole supports that Plaintiff had the capacity to perform a range of light work with the additional limitations assessed by the ALJ. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is DENIED; Defendant's Cross Motion for Judgment on the Pleadings is GRANTED; and the Commissioner's decision is AFFIRMED.

**SO ORDERED.**

**Dated: March 29, 2019**

**New York, New York**

HON. ANDREW L. CARTER, JR.

**United States District Judge**

24